# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

SANDRA L. MEYER,

        Plaintiff,

    vs.                                      No. Civ. 97-0757 SC/LFG

SANDIA CORPORATION and
THE SANDIA CORPORATION
RETIREMENT INCOME PLAN,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the parties' cross-motions for summary judgment, both filed March 9, 1998 [Doc. Nos. 26 & 29]. The Court, having read the motions, memoranda, and exhibits submitted by the parties, and being apprised of the applicable law, rules that Plaintiff's motion is not well taken, and Defendants' motion is well taken. I shall deny Plaintiff's motion and grant Defendants' motion for the reasons set forth below.

## I. BACKGROUND

Plaintiff seeks judicial review under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, of a final administrative decision by Defendant Sandia Corporation on Plaintiff's benefit claim under an employee pension benefit plan (Defendant The Sandia Corporation Retirement Income Plan (the Plan)).

The parties agree that ERISA applies to the resolution of this case. The parties also agree that Plaintiff's claim is for payment of benefits under the Plan, pursuant to 29 U.S.C. § 1132. The United States Supreme Court has said that under the civil enforcement scheme of ERISA, a "beneficiary may sue to recover benefits due under the plan [or] to enforce the participant's rights under the plan." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53 (1987). The parties further stipulate that Plaintiff has complied with all procedural requirements of the Plan and exhausted all required administrative and/or Plan requirements.

The relevant facts are not in dispute, and have been stipulated to by the parties. See Joint Stip. of Facts [hereinafter Stip.]. The Plan is an employee pension benefit plan, as defined in ERISA at 29 U.S.C. § 1002. Defendant Sandia Corporation is the trustee and administrator of the Plan.[1] Regarding Automatic Survivor Annuities, the Plan provides in relevant part:

> Effective October 1, 1987, in the event of the death of an active employee whose term of employment includes at least five *years service* . . . or who is eligible for a service pension or a deferred vested pension under Paragraph 1(a) or 1(b), respectively, of this Section 4[,] at the time of his death and who leaves a surviving spouse, who in the case of an employee whose term of employment was less than fifteen *years* as of the date of death, had been married to the employee for at least one *year* prior to his death, such surviving spouse shall receive a survivor annuity, commencing as of the date specified in the immediately following sentence, in the amount which would have been

---

[1] In the remainder of this Opinion, I will refer only to Defendant Sandia Corporation and will use the term "Defendant."

> payable had such employee retired on a service pension, or, in the case of an employee who had five *years of service* but not fifteen *years of service* and was not eligible for a service pension, the amount which would have been payable upon the subsequent commencement of a survivor annuity related to a deferred vested pension, regardless of his actual eligibility therefor, on the date of his death . . . . Such survivor annuity shall commence as of the day following the employee's death in the case of an employee whose term of employment included at least fifteen *years service* or who was eligible for a service pension as of the date of death, and shall commence as of the date the employee would have attained normal retirement age in all other cases . . . .

Plan at § 4(3)(d) (Stip. Ex. A) (emphases added). The Plan defines "year of service" as follows: "The expression 'year of service' for determining Plan participation and eligibility for a deferred vested pension, shall mean a computation period in which an employee completes 1000 hours of service." Plan at § 2(14).

Plaintiff Sandra L. Meyer is the surviving spouse of William J. Meyer, deceased. Mr. Meyer was employed by Defendant and was a Plan participant as of the date of his death, October 11, 1995. As the surviving spouse of an employee covered by the Plan, Plaintiff is a beneficiary under the Plan. At the time of his death, Mr. Meyer was employed by Defendant for 14.4630 years. "Except for 1972, in all calendar years during which [Mr. Meyer] was employed for less than a full 12 months, during the period of his employment, [he] completed 1000 hours of service." Stip. ¶ 9. Following her husband's death, Plaintiff filed a claim with Defendant for the immediate payment of an Automatic Survivor Annuity (Annuity) provided by § 4(3)(d) of the Plan, contending she was eligible for immediate payment of the Annuity because, at the time of his death, her

3

husband had completed 15 "years of service," as that term is defined by the Plan. Defendant denied Plaintiff's claim, concluding that, under § 4(3)(d), for payment to commence the day after the date of Mr. Meyer's death, Mr. Meyer needed to have been employed with Defendant for 15 years at the time of his death, which he was not. Defendant found instead that, under the Plan, Plaintiff was entitled to payment in 2008, the year in which Mr. Meyer would have reached age 65 years and normally would have retired.[2]

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). Because this case is before me on cross-motions for summary judgment, neither party argues that a genuine issue of material fact exists. Thus, this case turns on a question of law to be decided by the Court.

---

[2] The "normal retirement age" under the Plan is 65 years. Plan at §4(1)(f).

**B.     Judicial Review of ERISA Plan**

A denial of benefits under an ERISA plan is reviewed *de novo* unless the plan gives the administrator or fiduciary discretion to determine eligibility for benefits or to construe the terms of the plan.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Thorpe v. Retirement Plan of Pillsbury Co., 80 F.3d 439, 442 (10th Cir. 1996); Carland v. Metropolitan Life Ins. Co., 935 F.2d 1114, 1118 (10th Cir. 1991).  If the terms of the plan give the administrator or fiduciary discretion to decide a certain issue, the administrator's decision on that issue must be upheld unless it was arbitrary and capricious, not supported by substantial evidence, or erroneous on a question of law.  See Thorpe, 80 F.3d at 442-43; Millensifer v. Retirement Plan for Salaried Employees of Cotter Corp., 968 F.2d 1005, 1009-10 (10th Cir. 1992).  If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict is weighed as a factor in determining whether to uphold the administrator or fiduciary's determination, but does not alter the standard of review.  See Bruch, 489 U.S. at 115.  Under the arbitrary and capricious standard, "the trustees's determination will not be disturbed if reasonable."  See id. at 111.

The parties agree that, under the terms of the Plan, the arbitrary and capricious standard applies in this case.  The Plan provides, for example, that Defendant's Employee Benefits Committee and the Employee Benefits Claim Review Committee

> shall control and manage the operation and administration of the Plan, including[,] but not limited to, the determination of all questions relating to eligibility for participation and

5

> benefits, interpretation of all [P]lan provisions, determination of the amount and kind of benefits payable to any participant, spouse or beneficiary, and construction of disputed or doubtful terms, and determine conclusively for all parties all questions arising in the administration of the Plan[,] and any decision of such Committee or Review Committee shall not be subject to further review.

Plan at § 3(4). Therefore, I shall use the arbitrary and capricious standard in reviewing Defendant's interpretation of § 4(3)(d) and its determination that Plaintiff is not eligible for immediate payment of her Annuity.

## III. LAW AND ANALYSIS

The dispute between Plaintiff and Defendant essentially is whether the predicate for immediate payment of an Annuity under the Plan is that the deceased employee have worked 15 *years* or that the deceased employee have completed 15 "*years of service*," with a "year of service" defined as a 12-month period in which the employee completed at least 1000 hours of service. If the former is the rule, then Plaintiff is not entitled to payment of the Annuity until the year 2008, the year in which her husband would have reached the Plan's normal retirement age of 65 years. If the latter rule applies, then Plaintiff was entitled to payment of the Annuity as of the day after the date of her husband's death, October 12, 1995.

### A. ERISA Calculation Requirements

Plaintiff contends that Defendant's interpretation of the Plan contravenes ERISA by conditioning immediate payment of an Annuity on 15 years of employment rather than

on the completion of 15 "years of service," i.e., 15 12-month periods in which 1000 hours were completed. I find that Plaintiff's argument is without merit.

It is true that for some purposes ERISA has a "year of service"/1000-hour calculation requirement. See, e.g., 29 U.S.C. § 1052(a)(3)(A) (minimum participation standards) ("For purposes of this section, the term 'year of service' means a 12-month period during which the employee has not less than 1,000 hours of service."); § 1053(b)(2)(A) (minimum vesting standards) ("For purposes of this section, . . ., the term 'year of service' means a calendar year, plan year, or other 12-consecutive-month period designated by the plan . . . during which the participant has completed 1,000 hours of service."). ERISA, however, has no such requirement for commencement of Annuity payments. See id. at § 1055(e)(1)(B); see also id. at § 1056(a). Rather, ERISA requires only that an Annuity payment commence no later than "the month in which the participant would have attained the earliest retirement age under the plan." Id. at § 1055(e)(1)(B). Consequently, Defendant's use of a standard other than the "year of service" rule for purposes of Annuity payment commencement calculations does not violate ERISA.

**B.     The Cases of LED and WFY**

Plaintiff contends that Defendant's administrative decision to deny her claim on the basis of its interpretation of § 4(3)(d) is arbitrary given its treatment of other Plan beneficiaries. Plaintiff's argument is meritless. There have been only three employees of

7

Defendant in the past 10 years who worked at least 14 years for Defendant and whose spouses, thus, could have been eligible for an Annuity: Mr. Meyer, LED, and WFY. See Stip. ¶ 26. Defendant's treatment of Plaintiff was not inconsistent with its treatment of the spouses of LED and WFY.

LED died in the fourth month of his 15th year with Defendant, similar to Mr. Meyer, who died in the fifth month of his 15th year. See id. As it did in Plaintiff's case, Defendant denied LED's spouse's claim for immediate payment of her Annuity, finding instead that payment of her Annuity should commence on the date LED would have reached the normal retirement age of 65 years.

WFY died in the midst of the last month of his 15th year of employment--hired October 25, 1976, died October 7, 1991. See id. at ¶¶ 22, 26. Defendant immediately began payment of WFY's spouse's Annuity. Such action is not inconsistent with Defendant's action in Plaintiff's case. Because Mr. Meyer died in the fifth month of his 15th year, he and WFY, and their spouses, are not similarly situated. There is no evidence that Defendant applied the 1000-hour rule in awarding immediate payment of the Annuity in the WFY case. Furthermore, in the Plan, there is no mandate that a 15-year employment term is to be calculated to the day, rather than to the month, nor prohibition against crediting an employee for the month in which he died. Therefore, I find that Defendant's administrative decision to deny Plaintiff's claim for immediate payment of the Annuity was not arbitrary or capricious in comparison with its administrative decisions in the LED and WFY cases.

C.     **Reasonable Interpretation of Plan Language**

Plaintiff contends, syllogistically, that: (1) the term "years service" in § 4(3)(d) is a typographical error and was intended to read "years of service;" (2) "years of service" is a term of art referring to the 1000-hour rule; and (3) because § 4(3)(d) uses the term "years of service" (or "year service"), the 1000-hour rule applies to § 4(3)(d). Defendant counters that (1) the use of term "years service" in § 4(3)(d) is not an error; (2) even if the Plan draftsman intended the term "years of service" instead of "years service," "years of service" in § 4(3)(d) does not refer to the 1000-hour rule, but only to the ordinary meaning of the phrase--12 consecutive months of employment.

Although Plaintiff's interpretation of § 4(3)(d) may be reasonable, I must defer to Defendant's construction if it is reasonable and absent of administrative bias. See Millensifer v. Retirement Plan for Salaried Employees of Cotter Corp., 968 F.2d 1005, 1010 (10th Cir. 1992); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). I have reviewed the record and find no evidence of bad faith or conflict of interest on Defendant's part. I also find that Defendant's construction of § 4(3)(d) is reasonable for the following reasons. First, eligibility for immediate commencement of Annuity payments does not fall within the confines of the Plan's "year of service" definition. See Plan at § 2(14). The Plan explicitly limits its "year of service" 1000-hour definition to eligibility for Plan participation and eligibility for a deferred vested pension (also known as "vesting"). See id. Second, a specific time period is required in

9

reference to what constitutes a 12-month period in which a 1000-hour term of service is to be calculated. While such calculation periods are provided in the Plan for participation and vesting eligibility, no such period is provided for commencement of Annuity payment calculations. See id. at §§ 6(3)(b), 6(3)(c). Third, no inconsistency or absurdity results, if, as Defendant argues, the phrases "years," "years service," and "years of service" in § 4(3)(d) are all construed to mean the plural form of "year," i.e., 12 consecutive months of employment. Fourth, neither the service pension nor the deferred vested pension provisions use the 1000-hour rule for payment commencement calculations. See id. at §§ 4(1)(a), 4(1)(b). Finally, the Plan's application of the 1000-hour rule tracks ERISA. See, e.g., 29 U.S.C. § 1052(a)(3)(A); § 1053(b)(2)(A); § 1055(e)(1)(B); § 1056(a). Therefore, because Defendant's interpretation of § 4(3)(d) is reasonable and in good faith, I find that Defendant's denial of Plaintiff's claim was not arbitrary or capricious.

### D.     ERISA Anti-Cutback Provision

Plaintiff contends that Defendant's interpretation of the current version of § 4(3)(d) violates the anti-cutback provision of ERISA, 29 U.S.C. § 1054(g), because both the Plan and the Summary Plan Description (SPD) in effect before the adoption of the current 1994 Plan and 1995 SPD "clearly provide that the surviving spouse of an

employee who has completed fifteen 'years of service' as of the date of death is entitled to an [Annuity]." Pl. Brief in Support at 22. Plaintiff's argument fails.

While the current 1994 Plan does amend and restate the 1989 Plan, after comparing both versions of § 4(3)(d) in the Plan, I could find no differences in the wording of § 4(3)(d). Furthermore, there is no indication that the 1989 version of § 4(3)(d) was intended to incorporate the 1000-hour rule by its use of the phrases "years of service" or "years service." My comparison of the present and prior version of the SPD on the issue of Annuities does not change my view that the prior and current versions of § 4(3)(d) are to be interpreted similarly.[3] Accordingly, I find that there has been no change in benefits criteria and, thus, the current version of § 4(3)(d) does not violate § 1054(g) of ERISA.

* * * *

For the above reasons, I find that there are no disputed issues of material fact and that Defendants are entitled to judgment as a matter of law.

**NOW, THEREFORE, IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. No. 26], filed March 9, 1998 should be, and hereby is, DENIED.

---

[3] I note that the 1995 Summary Plan Description (SPD) does not contain the "Highlights" section contained in the prior 1991 SPD. I also note that in both the 1991 "Highlights" subsections on Plan Participation and Annuities the phrase "years of service" is used. See Stip. Ex. K at 5, 6. However, it is apparent from the detailed sections in the 1991 SPD on Plan Participation and Annuities, that the use of the phrase "years of service" in the 1991 SPD was intended to invoke the 1000-hour rule only for the purpose of Plan Participation. See id. at 7, 16.

11

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 29], filed March 9, 1998 should be, and hereby is, GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff: John S. Campbell, CAMPBELL & WELLS, P.A., Albuquerque, New Mexico, and John N. Lieuwen, LAFLIN, LIEUWEN, TUCKER, PICK & HEER, P.C., Albuquerque, New Mexico

Counsel for Defendants: Stephen T. LeCuyer, METTLER & LECUYER, P.C., Corrales, New Mexico